1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10
11   ANTHONY TAYLOR,
12            Petitioner,              No. 2:06-cv-01927 ALA (HC)
13       vs.
14   DERRAL G. ADAMS, Warden,[1]_____ ORDER
15            Respondent.
16   _____/
17       Petitioner is a state prisoner proceeding *pro se* with an application for a writ of habeas
18   corpus filed pursuant to 28 U.S.C. § 2254(a).  Pending before this Court are Petitioner's
19   application for a writ of habeas corpus (Doc. 1), Respondent's Answer (Doc. 9), and Petitioner's
20   Traverse (Doc. 16).  For the reasons discussed below, Petitioner's application will be denied.

**I**

22       On August 13, 2003, a Sacramento County Superior Court jury convicted Petitioner of
23

24       [1]Derral G. Adams is substituted for his predecessor, T. Felker, as the warden where the
25   prisoner is incarcerated, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.
26

1

first degree murder for aiding and abetting the premeditated murder of Fredrick Goerend, case number 01F09137.  (Lodged Doc. 1.)  On September 19, 2003, Petitioner was sentenced to fifty-eight years to life in prison for violating California Penal Code section 187(a).  (*Id.*)[2]

**A**

Petitioner filed a direct appeal of the judgment of conviction before the California Court of Appeal, Third Appellate District.  In its decision affirming the judgment, the Court of Appeal summarized the relevant facts as follows:[3]

> Katrina Carter lived with her boyfriend Fredrick Goerend (Goerend's nickname was "Freddy") in his house on 79th Street in Sacramento.  Goerend operated it as a house of prostitution, using Carter's services.  Carter was permitted to service only Mexicans.  The earnings from the brothel funded Goerend's and Carter's crack cocaine addiction.  Goerend had several rock cocaine suppliers.  Defendant Taylor was one of them.  Derrick Courtney also sold the couple drugs.  Carter testified Taylor was the "last resource" Goerend would call for drugs, as he treated Goerend badly.  Once or twice, Taylor robbed one of the Mexican johns whom Carter was "dating."  Taylor warned the couple that if they ever reported what he had done, he would kill them.  Consequently, they were always afraid whenever Taylor came to the house.  Taylor and Courtney would usually come to Goerend's house on weekends accompanied by their friends, including defendant Sellers.  Two nights before the murder, Sellers and Courtney came to Goerend's house with three female friends and began to party.  Carter said the group was acting "ruthless" like they were "the boss of the house."  Taylor later joined them.  When Carter complained that the music was too loud and that she had to get up early the next morning, Sellers replied, "I don't give a fuck," and threatened to slap her.  Goerend and Carter retreated into the garage, where they always went to get away from the defendants.  Goerend called the police using a neighbor's phone, ignoring Carter's concern for their safety due to Taylor's prior death threat.  The police arrived and ejected the group from the house.  The next day, fearing the group would return, Goerend and

---

[2]Petitioner's sentence was enhanced for a prior assault conviction and for a prior drug possession conviction.  (*See* Lodged Doc. 1.)

[3]The factual findings of the Court of Appeal are presumed correct as Petitioner has not raised a challenge to their accuracy.  *See* 28 U.S.C. § 2254(e)(1).

Carter barricaded themselves in the house, but nothing happened. However, Vikeya Williams, one of the females who was partying at the house the previous night, called Carter and accused her of calling the police, a charge which Carter did not deny.  On the following evening, Sellers, Taylor, Courtney and others, including their female companions, gathered at a bowling alley where they bowled and played video games.  They made a "group decision" to go to Goerend's house, and arrived there between 1:30 and 1:45 a.m. in several cars.  Goerend and Carter were naked and preparing to go to bed in the master bedroom.  They had locked the front door and barricaded the back door.  The master bedroom door also was locked.  Suddenly, Carter heard an angry knock at the front door.  Goerend looked out the bedroom window but before he could tell Carter who was at the door, Carter said, "It's them."  She heard the sound of windows breaking, the back door being pushed open and people running through the house.  Goerend tried to hold the bedroom door closed, but it was forced open and Taylor appeared.  Taylor hit Goerend in the face repeatedly with his fist. Taylor asked Goerend, "Why did you call the police?"  Goerend replied, "I didn't," but Taylor insisted, "yes, you did" and continued punching him.  At one point, Taylor said, "take him outside."  Courtney helped Taylor drag Goerend out of the room. Carter noticed Sellers standing nearby and asked him, "Why are you doing this?"  Sellers replied that it was because Goerend had called the police, and walked out the door.  Within minutes after Goerend was pulled out of the bedroom, he was shot in the driveway outside the house.  A neighbor who looked out his window after hearing the commotion saw Goerend apparently arguing with the men.  Just before he was shot, Goerend said "no, no," whereupon one of the men walked up and fired one or two shots from close range.  After the gunshot, a female voice said something like "That's enough.  Let's go."  The shooter walked back into the house and emerged, accompanied by a woman.  They ran to one of the cars and drove away.  The cars then drove off in different directions.  Goerend died from a single gunshot wound to the back.  The nature of the wound indicated the gun had been fired from a few inches to a few feet away.  There were multiple contusions and abrasions to his face, including a one-inch laceration going completely through the skin to the surface of the skull.  Immediately following the shooting, Carter told a police detective, "I know who did this."  She identified Courtney, Taylor and Sellers by name and also gave physical descriptions.  Carter subsequently selected Courtney, Taylor and Sellers from photographic lineups.

**Defense Evidence**

3

1
2
3
4
5
6
7

Neither defendant testified.  However, three of the women who
accompanied defendants to Goerend's house on the night of the
shooting testified for the defense.  Lakiesha Douglas testified that
she never knew Taylor or Sellers to carry a gun.  Christina Reeves
and Kellie Blosser (who married Taylor after his arrest) testified
that Courtney broke Goerend's window by throwing a bicycle
through it.  Blosser denied that Taylor had a gun with him when he
arrived at Goerend's house.  According to Reeves, Courtney
walked up to the car window immediately afterward with a smug
look on his face and said, "I shot Freddy."  Reeves and Blosser
also testified that afterwards, Taylor was visibly upset by the
shooting of Goerend, to the point of tears.

8   (Lodged Doc. 2.)

9                                    **B**

10       On December 13, 2004, the Court of Appeal corrected a clerical error in Petitioner's

11   abstract of judgment and affirmed Petitioner's conviction.  On January 13, 2005, Petitioner

12   sought review in the California Supreme Court.  The California Supreme Court denied the

13   petition for review on March 2, 2005.

14                                    **C**

15       On June 13, 2005, Petitioner filed a petition for a writ of habeas corpus in the Sacramento

16   County Superior Court.  He raised three alleged grounds for relief: ineffective assistance of trial

17   counsel; trial court error; and insufficiency of the evidence.[4]  In a reasoned decision, the

18   Sacramento County Superior Court denied the petition on October 11, 2005.  (Lodged Doc. 5,

19   Ex. 3.)

20                                    **D**

21       Petitioner filed a petition for a writ of habeas corpus in the California Court of Appeal,

22

23   Third Appellate District, on November 9, 2005.  The California Court of Appeal summarily

24   ────────────────

25       [4]Petitioner does not raise ineffective assistance of trial counsel as a ground for relief in
the instant application.

26                                    4

1    denied the petition on December 1, 2005.  (Lodged Doc. 5, Ex. 4.)

2                                                E

3         Petitioner filed a petition for a writ of habeas corpus in the California Supreme Court on

4    December 13, 2005, case number S139575.  The California Supreme Court summarily denied

5    the petition on September 20, 2006.  (Lodged Doc. 3.)

6                                                F

7         On August 28, 2006, Petitioner filed an application for a writ of habeas corpus in this

8    Court pursuant to 28 U.S.C. § 2254(a).  (Doc. 1.)

9                                               II

10                                               A

11        The instant application was filed after the enactment of the Antiterrorism and Effective

12   Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, a federal court has limited power to grant

13   habeas corpus relief under § 2254.  AEDPA provides that

14
15              An application for a writ of habeas corpus on behalf of a person in
                custody pursuant to the judgment of a state court shall not be granted
16              with respect to any claim that was adjudicated on the merits in state
                court proceedings unless the adjudication of the claim

17              (1) resulted in a decision that was contrary to, or involved an
18              unreasonable application of, clearly established Federal law, as
                determined by the Supreme Court of the United States; or

19              (2) resulted in a decision that was based on an unreasonable
20              determination of the facts in light of the evidence presented in the
                State court proceeding.

21   28 U.S.C. § 2254(d).

22        Under § 2254(d)(1), "[a] state-court decision is 'contrary to'. . . clearly established

23   [United States Supreme Court] precedents if it 'applies a rule that contradicts the governing law

24   set forth in [Supreme Court] cases,' or if it 'confronts a set of facts that are materially

25
26                                               5

indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant habeas relief if the state court identified the correct governing legal principle from Supreme Court precedent, but unreasonably applied that principle to the facts of the case at bar. *Williams*, 529 U.S. at 413. A federal habeas court, however, "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous") (internal quotation marks and citations omitted).

Section 2254(d)(2) "authorizes federal courts to grant habeas relief in cases where the state-court decision 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' Or, to put it conversely, a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004) (quoting 28 U.S.C. § 2254(d)(2)).

**B**

In the instant habeas application, Petitioner asserts that he is entitled to relief on four grounds.[5] First, Petitioner claims that his Sixth and Fourteenth Amendment rights were violated

---

[5] Petitioner's Traverse also includes the claim that the trial court abused its discretion by not allowing defense counsel to investigate Petitioner's mental state and competency to stand

when the prosecutor argued facts not in evidence.  Second, Petitioner claims that the prosecutor

committed misconduct by arguing that evidence of prior crimes established Petitioner's bad

character.  Third, Petitioner claims there was insufficient evidence to support the prosecutor's

murder theory under the doctrine of natural and probable consequences.  Last, Petitioner claims

his due process rights were violated when the trial court allowed testimony of a highly

prejudicial nature to be admitted into evidence.  Respondent acknowledges that Petitioner

exhausted his federal constitutional claims.

C

"In determining whether a state court decision is contrary to federal law, we look to the

state's last reasoned decision."  *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).  Petitioner's

first two claims regarding alleged prosecutorial misconduct were raised on his direct appeal to

the California Court of Appeal.  It rejected his first two claims in a reasoned opinion.  Therefore,

this Court must look to the Court of Appeal's decision in determining these claims.  *See Ylst v.*

*Nunnemaker*, 501 U.S. 797, 803 (1991).  Regarding Petitioner's third and fourth claims for

relief, the Sacramento County Superior Court addressed those claims in a reasoned decision in

determining his state petition for a writ of habeas corpus.  Therefore, in assessing Petitioner's

entitlement to habeas relief with respect to his third and fourth claims, this Court will review the

Sacramento County Superior Court's decision.  *See id.*

III

A

---

trial. (Doc. 16.)  This claim was not set forth in his application filed pursuant to § 2254(a).
Accordingly, this claim cannot be considered.  *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507
(9th Cir. 1994) ("A Traverse is not the proper pleading to raise additional grounds for relief
[because] [i]n order for the State to be properly advised of additional claims, they should be
presented in an amended petition or . . . in a statement of additional grounds.  Then the State can
answer and the action can proceed.").

7

1   Petitioner first argues that the prosecutor committed misconduct by repeatedly asserting

2   that drug dealers are more likely to carry guns, despite a lack of evidence in the record to support

3   that assertion.  The California Court of Appeal found that Petitioner failed to object to the

4   prosecutor's remarks or request a curative admonition.  (Lodged Doc. 2 at 19.)  "When a

5   state-law default prevents the state court from reaching the merits of a federal claim, that claim

6   can ordinarily not be reviewed in federal court."  *Ylst*, 501 U.S. at 801 (citing *Wainwright v.*

7   *Sykes*, 433 U.S. 72, 87-88 (1977)).  If a state court relies on a state procedural bar, federal habeas

8   review is barred, so long as the state's procedural rule is both independent and adequate.

9   *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).  In *Coleman*, the Supreme Court held that

10
11          [i]n all cases in which a state prisoner has defaulted his federal
            claim in state court pursuant to an independent and adequate state
12          procedural rule, federal habeas review of the claims is barred
            unless the prisoner can demonstrate cause for the default and
13          actual prejudice as a result of the alleged violation of federal law,
            or demonstrate that failure to consider the claims will result in a
            fundamental miscarriage of justice.
14
15   *Coleman*, 501 U.S. at 750.

16          In holding that Petitioner's prosecutorial misconduct claim was barred, the Court of

17   Appeal cited *People v. Wash,* 6 Cal. 4th 215, 265 (1993), for the proposition that Petitioner had

18   waived any claim to error by failing to object or request a curative admonition.  (Lodged Doc. 2

19   at 19.)  The Court of Appeal based its decision to decline review of the claim on this ground.

20   Petitioner has failed to demonstrate that he made any contemporaneous objections regarding this

21   claim, and has not demonstrated cause for the default or actual prejudice resulting from the

22   alleged violation of federal law.  *Coleman*, 501 U.S. at 745.  Therefore, this claim is barred from

23   review by this Court.  *Wainwright*, 433 U.S. at 86-87; *see Boyd v. Thompson*, 147 F.3d 1124,

24   1126 (9th Cir. 1998) (holding that federal habeas is barred if the petitioner fails to meet a state

25   procedural requirement).

26
                                        8

**B**

Petitioner also claims that the prosecutor committed misconduct by arguing that Petitioner sold drugs and robbed the victim's "johns" after the trial judge had admonished the jury not to consider such statements as evidence of Petitioner's criminal propensity or guilt.

Petitioner failed to interpose a contemporaneous objection to the prosecution's comment. Accordingly, Petitioner is procedurally barred from raising this issue before this Court. *Wainwright*, 433 U.S. at 86-87.

**C**

Petitioner further challenges the sufficiency of the evidence to support the prosecutor's murder theory under the doctrine of natural and probable consequences.  Petitioner claims that there was insufficient evidence to establish that he could have anticipated that an altercation would escalate into a homicide.

When presented with Petitioner's habeas petition, the Sacramento County Superior Court declined to address the merits of this claim, citing *In re Harris*, 5 Cal. 4th 813, 829 (1993) and *In re Dixon*, 41 Cal. 2d 756, 759 (1953).  (Lodged Doc. 5, Ex. 3 at 1.)  In both *Harris* and *Dixon*, the California Supreme Court held that absent extenuating circumstances, a writ of habeas corpus will be denied if the federal claims raised in the petition could have been raised on direct appeal, but were not.  *In re Harris*, 5 Cal. 4th at 829 ("absent strong justification, issues that could be raised on appeal must initially be so presented, and not on habeas corpus in the first instance . . . an unjustified failure to present an issue on appeal will generally preclude its consideration in a postconviction petition for a writ of habeas corpus"); *In re Dixon*,  41 Cal. 2d at 759 ("habeas corpus cannot serve as a substitute for an appeal," and absent "special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a

judgment of conviction"); *see also Park v. California*, 202 F.3d 1146, 1151 (9th Cir. 2000) ("[i]n California, a convicted defendant desiring to bring claims in a state habeas petition, must, if possible, have pursued the claims on direct appeal from his conviction").

The Sacramento County Superior Court denied Petitioner's habeas petition on procedural grounds. Because that court declined to address the merits of the claim due to Petitioner's failure to meet state procedural requirements, the adequate and independent state grounds doctrine bars federal habeas review. *Coleman*, 501 U.S. at 729-30. Petitioner has not demonstrated cause for the default or actual prejudice resulting from the alleged violation of federal law. *See id.* at 745. Accordingly, Petitioner's claim is procedurally barred.

## D

Finally, Petitioner claims that the trial court committed reversible error in violation of his right to due process by admitting testimony that Petitioner sold drugs to the victim and had robbed "johns." The Sacramento County Superior Court declined to address the merits of this claim because they were not raised on direct appeal, citing *In re Harris* and *In re Dixon*. (Lodged Doc. 5, Ex. 3 at 1.) Accordingly, the adequate and independent state grounds doctrine also bars federal habeas review of this claim. *Coleman*, 501 U.S. at 729-30.

## Conclusion

Accordingly, it is hereby ORDERED that Petitioner's application for a writ of habeas corpus is DENIED. The Clerk is DIRECTED to enter judgment and close the case.

/////

DATED: October 8, 2008               /s/ Arthur L. Alarcón
                                      UNITED STATES CIRCUIT JUDGE
                                      Sitting by Designation